# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| ECEIPT, LLC,<br>    *Plaintiff*<br><br>-v-<br><br>VICTORIA'S SECRET STORES, LLC,<br>    *Defendant* | 6:20-CV-747-ADA |
| ECEIPT, LLC,<br>    *Plaintiff*<br><br>-v-<br><br>BATH AND BODY WORKS, LLC,<br>    *Defendant* | 6:20-CV-754-ADA |

## CLAIM CONSTRUCTION ORDER

Before the Court are the parties' claim construction briefs. Plaintiff eCeipt, LLC ("eCeipt") submitted its opening and reply briefs (ECF Nos. 21 and 23, respectively), and Defendants Victoria's Secret Stores, LLC ("Victoria's Secret") and Bath and Body Works, LLC ("Bath and Body Works") submitted its responsive and sur-reply briefs[1] (ECF Nos. 22 and 24, respectively). The Court held the *Markman* hearing on July 12, 2021. ECF No. 31. This Order informs the parties of the Court's constructions.

## FACTUAL BACKGROUND

ECeipt filed the above lawsuits on August 19, 2020, asserting U.S. Patent Nos. 8,643,875 ("the '875 patent") against Defendants. ECF No. 1 at 2-15.

---

[1] These ECF Numbers refer to the -747 case specifically. However, defendant Bath and Body Works have incorporated the same responsive and sur-reply claim construction briefs in their respective cases. Accordingly, the Court will refer to all defendants collectively as "Victoria's Secret."

1

The '875 Patent is titled "Receipt Handling Systems, Print Drivers and Methods Thereof." The invention described an approach to accomplishing a specific, practical, and useful improvement to the existing computer-aided processes used for "receipt handling systems, print drivers and methods thereof that substantially obviate one or more of the problems due to limitations and disadvantages of the related art." ECF No. 1 at 3, ¶ 9. The computer-implemented methods are used to perform a distinct process to provide a person with the option of having his or her receipt printed at the store location, e-mailed, or both, and then having the receipt e-mailed to him or her if that option is selected. *Id.*

## STANDARD OF REVIEW

Generally, courts construe claim terms according to their plain and ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*). The Federal Circuit applies a "heavy presumption" in favor of construing terms according to their plain and ordinary meaning, that is, the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) (vacated on other grounds); *Phillips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning are when the patentee acts as his own lexicographer or disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* at 1365. To disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent "a clear disavowal of claim scope." *Id.* at 1366. Accordingly, when "an applicant's statements are

amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

While the specification "may aid the court" in analyzing disputed language in a claim, "particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (internal citations omitted). Absent a "clear indication in the intrinsic record that the patentee intended the claims to be…limited," courts do not read limitations found in the specification into the claims. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

## DISCUSSION

### A. "Image Data" – Term 1.

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary (plain and ordinary meaning) | "data that includes an image" |

This Court construes the term "image data" to mean "data needed to generate or render a visual image" as proposed by Plaintiff during the hearing. ECF 35 at 16, ln. 22-23.

In its original construction, Plaintiff's proposed plain and ordinary meaning since it is easily understood by the reading of the claim. ECF 19 at 5. Plaintiff clarifies that image data does not "include an image," but rather can be rendered into a representation of a receipt. *Id.* at 6. Furthermore, Plaintiff contends that "image data may describe the characteristics of each individual pixel of a display, or image data that may contain a geometric description which can be rendered smoothly at any desired display size." *Id.* at 9. During the hearing, Plaintiff proffered a change in its construction of its term to "data needed to generate or render a visual image." ECF 35 at 3, ln. 24-25. In offering this term, Plaintiff argued that an ordinary person skilled in the art

3

would also understand "image data" to mean "data needed to generate or render a visual image." *Id.* at 12, ln. 3-10.

Defendants assert that because the term "image data" includes the word "image," the term should be construed as "data that includes an image." ECF 20 at 10-15. As evidence, Defendants cites the fact that the specification never suggests that the image of the receipt can be anything other than an image. *Id.* at 11. Defendants further note that the file types referenced in the specification (jpeg, bitmap, etc.) are all image files and that the "image data," captured within those files would necessarily include an image. *Id.* at 11. Defendants also argue that the prosecution history "confirms that 'image data' must include an image." *Id.* at 15. Defendants note that there were three additional independent claims filed with the '875 Patent that were all rejected due to prior art *Seifert* reference and that since the applicant did not dispute the rejection and subsequent interpretation of "image data" in those claims, Plaintiff cannot now contest that "image data" does not specify an image of a receipt. *Id* at 15-16.

The Court disagrees. The Court finds that the term is referencing the components of an image that are necessary to generate an image, not that an image is required to be present. As Plaintiff notes in its reply brief, "image data can be: transmitted to a server with a corresponding file name; provided by e-mail; generated using a print driver; stored separately from an e-mail; and transmitted via the Internet to a server." ECF 21 at 3. Furthermore, the Court agrees with Plaintiff that, while jpeg and bitmap files are types of image files, these files themselves are not, strictly speaking, images. Rather, as a person of ordinary skill in the art would understand, these types of files typically either contain (1) data describing the characteristics of each individual pixel of a screen display or (2) a geometric description, which can be used to render an image. *Id.* at 3. In other words, though the image data can be used to generate an image of, for instance, a receipt,

the data itself does not constitute an image. *Id.*. Therefore, since it is clear that the specification relies upon these components of an image and not an image itself, Defendants' arguments are without merit.

In addition, Defendants' argument regarding the prosecution history of the '875 Patent are irrelevant here. While it is true that there were three other claims (14, 18, and 19) attached to the original filing of the '875 Patent, the Examiner still allowed Claim 1 of the '875 Patent to be issued with the term "image data." ECF 20 at 15-16. Therefore, since the Examiner did not change the term in Claim 1 nor reject it as the Examiner did with the other three claims, the Court finds that the prosecution history neither supports Defendants' construction nor forecloses Plaintiff's proffered term.

Consequently, this Court construes the term "image" to mean "data needed to generate or render a visual image."

### B.    Terms 2 and 3 have their Plain and Ordinary Meanings.

After reviewing the parties' briefing, the Court finds that the terms "representing a receipt corresponding to the purchasing transaction" and "persistently associated with the POS system" have their plain and ordinary meanings that a person of ordinary skill in the art would ascribe to them. Neither of these terms are too difficult or too technical in nature such that a construction would help the jury's understanding of them. *Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-800-WCB, 2014 WL 3735222, at *2 (E.D. Tex., July 28, 2014).

Regarding the term "representing a receipt corresponding to the purchasing transaction," Defendants' cite to several passages in the specification to support its proposed construction that "representing a receipt" be construed as the entire receipt, not just a portion.  ECF No. 20 at 17. For at least the reasons that follow, none of these passages meets the exacting requirements of

lexicography or disclaimer. *Merck & Co. v. Teva Pharms. USA*, 395 F.3d 1364, 1370 (Fed. Cir. 2005) ("When a patentee acts as his own lexicographer in redefining the meaning of particular claim terms away from their ordinary meaning, he must clearly express that intent in the written description."); *Liebel-Flarsheim v. Medrad, Inc.*, 358 F.3d 898. 900 (Fed. Cir. 2004) (holding that a disclaimer needs to be clear and unambiguous).

First, the specification does not provide a special definition for "representing" that differs from the meaning it would otherwise possess. *See Phillips*, 415 F.3d at 1316. Second, it is immaterial that the specification mentions the word "of the receipt" several times when discussing "image data." If the patentees intended to limit "representing a receipt corresponding to the purchasing transaction" to "of a receipt corresponding to the purchasing transaction," they could have simply added "representing a whole receipt" to the claim. They did not. As such, Defendants proposed construction of the term is too narrow and should not be accepted.

Regarding the term "persistently associated with the POS system," Defendants cite to the prosecution history as Claim 1 was originally read as "a customer information database associated with the POS." ECF No. 22 at 7. Defendants argue that since the Applicants had to amend Claim 1, they could have chosen continuously which according to Defendants' dictionary definitions means the same as persistently. The Court disagrees. Here, the Patent Office allowed the inventor's use of "persistently," therefore there is no need to clarify the term as "continuously."

Therefore, since there is no evidence provided by the Defendants' that show the patentee (1) acting as his/her own lexicographer or (2) disavowing the full scope of the claim term in either specification or during prosecution, the terms "representing a receipt corresponding to the purchasing transaction" and "persistently associated with the POS system" have their plain and

ordinary meanings that a person of ordinary skill in the art would ascribe to them. *Thorner*, 669 F.3d at 1365.

## CONCLUSION

In conclusion, the terms "representing a receipt corresponding to the purchasing transaction" and "persistently associated with the POS system" have their plain and ordinary meanings that a person of ordinary skill in the art would ascribe to them. None of these terms fit the exceptions to the general rule of construing claim terms according to their plain and ordinary meaning. The term "image data" means "data needed to generate or render a visual image." This term was properly narrowed by the applicant during prosecution history and in the specification.

**SIGNED** this 3rd day of September, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE